UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
UNITED STATES OF AMERICA                :
                                        :
            - v. -                      :          DECLARATION
                                        :
DAVID BLASZCZAK,                        :          17 Cr. 357 (LAK)
THEODORE HUBER,                         :
ROBERT OLAN and                         :
CHRISTOPHER WORRALL,                    :
                                        :
            Defendants.                 :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSHUA A. NAFTALIS hereby declares under penalty of perjury:

1.      I am an Assistant United States Attorney ("AUSA") in the United States Attorney's Office for the Southern District of New York (the "USAO").

2.      I am one of the AUSAs assigned to the investigation (the "Criminal Investigation") that led to the above-captioned indictment (the "Indictment").  I have personal knowledge of the facts and circumstances set forth herein through my involvement in the Criminal Investigation, including through my communications with others involved in the Criminal Investigation and my communications with employees of the Securities and Exchange Commission ("SEC"), which conducted its own investigation into some of the same underlying conduct at issue in this case (the "SEC Investigation").

3.      I submit this declaration in response to the Court's December 20, 2017 Order directing the USAO to outline the facts demonstrating its position that the Criminal Investigation was a parallel investigation with the SEC Investigation, not a joint investigation. (Dec. 20, 2017 Tr. 71).

- 1 -

4.      The SEC Investigation began as an informal inquiry, known as a "matter under inquiry" or "MUI," in or about July 2013.  In or about November 2013, the SEC opened a formal investigation and subsequently issued a formal order of investigation.  Approximately one year later, in or about November 2014, the SEC made a criminal referral to the USAO.  Prior to the criminal referral, the SEC had independently issued approximately 56 subpoenas and regulatory demands for various categories of documents.

5.      Following that November 2014 referral, the USAO assigned AUSAs to investigate potential violations of federal criminal law.  Thereafter, also in or about November 2014, the SEC granted the USAO's access request, and the then-assigned AUSAs met with SEC staff to discuss the ongoing SEC Investigation.

6.      Following the November 2014 meeting with the SEC, the USAO conducted the Criminal Investigation in parallel with, and separate from, the SEC Investigation.  The SEC Investigation was focused on whether there had been civil or regulatory violations of the securities laws, whereas the Criminal Investigation was focused on whether there had been violations of federal criminal law, including, but not limited to, securities fraud, wire fraud, theft of Government property, and defrauding the Government.  In or about late January 2015, the Federal Bureau of Investigation (the "FBI") opened its investigation relating to the subject matter underlying the Criminal Investigation.

7.      Given the partially overlapping subject matter of the parallel Criminal Investigation and the SEC Investigation, certain witness interviews were attended by both the USAO and the SEC.  Specifically, the USAO and the SEC conducted approximately 39 total interviews of approximately 19 individuals — with representatives of both agencies present — prior to the defendants' arrests on or about May 24, 2017.  Before each witness interview, the

USAO advised each witness that the USAO and the SEC were conducting separate investigations and, to the extent that proffer agreements were used, each agency entered into its own separate agreement with each witness. The USAO also advised each witness that the USAO and the SEC were conducting the interview at the same time for the convenience of the witness, and to avoid a duplicative, separate interview.

8.    The USAO also conducted certain interviews and witness preparation sessions independently from the SEC. Specifically, between November 2014 and the defendants' arrests on May 24, 2017, the USAO, together with the FBI and, at times, the United States Department of Health and Human Services Office of the Inspector General ("HHS OIG"), conducted approximately 13 interviews without participation from the SEC. In addition, on approximately eight occasions, the FBI approached individuals without SEC participation; HHS OIG was also present for certain of those approaches.

9.    As noted above, during the SEC Investigation, the SEC used its investigative subpoena power and other SEC process to obtain a number of relevant documents, including phone records, trading records, and e-mails. The USAO understands that the SEC provided the USAO with all of the documents it obtained from third parties during the SEC Investigation, with one exception discussed in the following paragraph. The USAO also obtained documents, at times, by issuing grand jury subpoenas and by executing judicially authorized search warrants. The USAO has produced all of the documents that it received from the SEC and obtained through the criminal process to the defendants as Rule 16 discovery in this case. As required by

federal law, the USAO did not provide the SEC with any documents it obtained by issuing grand jury subpoenas.[1]

10.    Until January 24, 2017, the SEC provided the USAO with all documents that ███████████████████████████████ had provided to the SEC.  As of January 24, 2017, the SEC entered into a so-called "purposeful production" agreement with ██████ which allowed ████████ to produce documents to the SEC while reserving its right to later "claw back" documents.  Because the USAO declined to enter into a similar agreement, the SEC did not provide the USAO with the documents that it received from ██████ after January 24, 2017. ███████████████████████████████████████████████████████ ████████████████████████████ Thus, after January 24, 2017, the USAO received from ████████ the same documents that ████████ had also produced to the SEC.

11.    Throughout the parallel investigations, the USAO and the SEC each undertook an independent process to determine which defendants to charge or sue, respectively, and which legal violations to allege.  At times, the agencies updated each other on the general status of their respective investigations, and whether and when each agency expected to be in a position to bring charges or file suit.

12.    Also during the parallel investigations, counsel for certain individuals and entities made factual presentations and/or engaged in pre-charging discussions with one or both agencies.  For example, Robert Olan's counsel made multiple presentations to the USAO; the SEC attended one of those presentations telephonically for the convenience of Olan's counsel, and to avoid a duplicative, separate presentation.  Counsel for another subject made presentations to the

---

[1]    Pursuant to Federal Rule of Criminal Procedure 6(e), certain portions of this declaration have been redacted.  An unredacted version will be submitted *ex parte* to the Court.

USAO that the SEC did not attend.  Counsel for Deerfield made factual presentations that were attended by both the USAO and the SEC; both agencies attended for the convenience of Deerfield's counsel, and to avoid duplicative, separate presentations.  In each of these cases, counsel was advised that the USAO and the SEC were undertaking separate, but parallel investigations, and that any decisions about whether charges would be brought would be made independently by each agency.  Additionally, the SEC engaged in separate pre-charge conversations with Olan, Deerfield, and other individuals.

13.  Prior to charging, the USAO and the SEC notified each other which defendants each anticipated charging or suing, and for what violative conduct.  Neither the USAO nor the SEC asked the other to bring a particular charge (or not to do so), or to charge or sue a particular defendant (or not to do so).

14.  On May 24, 2017, the USAO charged Robert Olan, but the SEC did not sue Olan.  On August 21, 2017, the SEC filed charges against, and settled with, Deerfield.  The USAO has taken no action against Deerfield.

15.  As the Court is aware, Olan has moved to compel the USAO to review any internal SEC work product that addresses the SEC's decision not to sue Olan in order to determine whether this internal SEC work product references any documents or witness statements that would constitute *Brady* material.  (Dkt. 80; Dec. 20, 2017 Tr. 53-54).  The USAO has asked the SEC if it would allow the USAO to review this internal SEC work product.  The SEC has declined, citing the attorney-client, work product, and deliberative process privileges.  The SEC has represented to the USAO that in the SEC staff's recommendation memorandum with respect to Olan, the SEC staff relied only on documents that are also in the possession of the USAO and witness statements from interviews at which the USAO was also present.  The USAO has relayed

- 5 -

- 6 -

that representation to counsel for Olan, who indicated that he still seeks the relief requested in his motion.

Pursuant to 18 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated:      New York, New York
            January 17, 2018

                              Joshua A. Naftalis
                              Assistant United States Attorney