UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                    :

  UNITED STATES OF AMERICA         :
                                      :

           - v. -            :     17 Cr. 357 (LAK)
                                      :

  DAVID BLASZCZAK,             :
  THEODORE HUBER,            :
  ROBERT OLAN and             :
  CHRISTOPHER WORRALL,      :
                                      :

         Defendants.       :
                                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

**GOVERNMENT'S MEMORANDUM OF LAW
IN FURTHER OPPOSITION TO DEFENDANT ROBERT OLAN'S MOTION FOR
AN ORDER DIRECTING THE GOVERNMENT TO REVIEW SEC WORK
PRODUCT FOR *BRADY* MATERIALS**

                                     Robert Khuzami
                                       Acting United States Attorney for the
                                       Southern District of New York

Ian McGinley
Joshua A. Naftalis
Brooke E. Cucinella
Assistant United States Attorneys
   -Of Counsel-

The Government respectfully submits this memorandum of law in further opposition to defendant Robert Olan's motion for an order directing the Government to review certain United States Securities and Exchange Commission ("SEC") files for *Brady* materials.[1]  (Dkt. 120).  Specifically, Olan seeks an order directing the Government to review the SEC's deliberative work product — the SEC staff's internal recommendation memoranda with respect to Olan.

Olan's motion should be denied.  The Government has already produced to Olan as Rule 16 discovery in this case all of the documents that the SEC relied upon in making its charging decisions.  In addition, the Government has already agreed to review all of the SEC's notes and memoranda of witness interviews for *Brady* material.   Thus, Olan's motion should be seen for what is:  an improper effort to gain access to the SEC's internal, core deliberative work product in a separate and parallel litigation.

## I.    Background

### A.    The Parallel Investigations

As detailed in the Government's opening brief and the Declaration of Assistant United States Attorney Joshua A. Naftalis ("Naftalis Decl."), the Government's investigation (the "Criminal Investigation") here was a parallel investigation to a civil regulatory investigation conducted by the SEC (the "SEC Investigation").   (Dkt. No. 94, 114).  The SEC Investigation began in or about July 2013.  (Naftalis Decl. ¶ 4).  Approximately one year later, in or about November 2014, the SEC made a criminal referral to the Government (meaning the United States Attorney's Office for the Southern District of New York).  (*Id*.).  Before making this referral, the SEC had issued approximately 56 subpoenas and regulatory

---

[1]    Defendants Theodore Huber, David Blaszczak and Christopher Worrall all join in Olan's motion.

demands as part of its investigation.  (*Id*.).  In or about late January 2015, the FBI opened an investigation into the conduct underlying the Criminal Investigation.  (Naftalis Decl. ¶ 5).

The Criminal Investigation and the SEC Investigation had different focuses.  The SEC investigation centered on whether there had been civil or regulatory violations of the securities laws.  (Naftalis Decl. ¶ 6).  The Criminal Investigation was broader, focusing on whether there had been violations of federal criminal law, including, but not limited to, securities fraud, wire fraud, theft of Government property, and defrauding the Government. (*Id*.).

In the interests of efficiency and given the partial overlap in subject matter, the Government and the SEC conducted a number of witness interviews together.  (Naftalis Dec. ¶ 7).  Before each interview, the Government and the SEC each advised the witnesses that they were conducting separate investigations and, to the extent that proffer agreements were utilized, each agency entered into its own agreement.  (*Id*.).  The Government also conducted certain interviews, witness preparations, and approaches of individuals without participation from the SEC.  (Naftalis Decl. ¶ 8).

Notably, as demonstrated by the fact that Olan was charged in the Criminal Investigation but not the SEC Investigation, the Government and the SEC each made separate and independent decisions regarding which defendants to charge or sue, respectively, and which legal violations to allege.  (Naftalis Decl. ¶ 11).  At times, the Government and the SEC updated each other on the general status of their respective investigations, but the ultimate decision-making was separate.  (*Id.*).  Neither the Government nor the SEC asked the other to bring a particular charge (or not to do so) or to charge/sue a particular defendant (or not to do so).  (Naftalis Decl. ¶ 12).

### B.    Discovery

During its investigation, the SEC subpoenaed or otherwise obtained relevant documents.  (Naftalis Decl. ¶ 9).  The Government understands that the SEC provided the Government with all of the documents the SEC had obtained from third parties during the SEC Investigation, with one exception — in which the Government obtained the responsive documents directly from a third party at around the same times as the SEC.  (Naftalis Decl. ¶¶ 9-10).  The Government has produced all of the documents that it received from the SEC and from grand jury subpoenas to the defendants as Rule 16 discovery in this case.  (Naftalis Decl. ¶ 9).

### C.    The Government's Agreement to Review Notes from SEC Witness Interviews

In the fall of 2017, the Government informed Olan that the Government would voluntarily review the SEC's notes and memoranda of witness interviews — including interviews at which the Government was not present — for *Brady*.

## II.    Discussion

### A.    The Government and the SEC Conducted Parallel Investigations

As an initial matter, Olan is not entitled to the additional information he seeks — access to the SEC's internal deliberative memoranda — because the Government and the SEC conducted separate investigations, not joint investigations.

In determining whether parallel civil and criminal investigations are "joint investigations," the Court should properly focus on whether the agencies engaged in joint decision-making, not joint fact-finding as suggested in *Gupta* and *Martoma*.  *See SEC v. Stanard*, No. 06 Civ. 7736 (GEL), 2007 WL 1834709, at *3 (S.D.N.Y. June 26, 2007) (noting that the SEC is an independent agency from the Government in holding that overlapping investigations were not conducted jointly); *United States v. Rigas*, No. 02 Cr. 1236 (LBS),

3

2008 WL 144824, at *2 (S.D.N.Y. Jan. 15, 2008)  (finding similarly parallel civil and criminal investigations were not "joint").

Any long-term, parallel investigation will inevitably result in overlap in fact-gathering.  The overlap in this case existed to promote efficiency and reduce costs (*see* Naftalis Decl. ¶ 7) — ends that have been affirmed by several judges in this District as the proper goals of parallel investigations.  *See*, *e.g.*, *United States v. Goffer*, No. 10 Cr. 56 (RJS) (S.D.N.Y. July 29, 2010) (Dkt. 90) (denying identical motion to this based, in part, on representations by the Government that similar cooperation as here occurred between the Government and the SEC); *Rigas*, 2008 WL 144824, at *2; *Stanard*, 2007 WL 1834709, at *2.  Here, because the Government and the SEC independently evaluated the evidence and independently made charging decisions (*see* Naftalis Decl. ¶¶ 11-12), the investigations were separate not joint.

Such an approach is consistent with this Court's decision in *United States v. Ghailani*, 687 F. Supp. 2d 365 (2010), as well as other cases.  *See also*, *e.g.*, *United States v. Abu Ghayth*, No. 98 Cr. 1023 (LAK) (Dkt. 1383) (S.D.N.Y. Nov. 26, 2013) ("The government is not obligated to search the files of other agencies not involved in this prosecution") (citing *Ghailani*, 687 F. Supp. 2d at 370-72)); *United States v. Stein*, 424 F. Supp. 2d 720, 723 (S.D.N.Y. 2006).  In *Ghailani*, the defendant sought access to, among other things, memoranda among various Government agencies (*e.g.*, the Central Intelligence Agency, the FBI, the Office of the President) related generally to the delay in transferring the defendant to the Southern District of New York for prosecution.  In considering this request, the Court considered the question of who should be considered the "government" for Rule 16 and *Brady* purposes.  *See Ghailani*, 687 F. Supp. 2d 365, at 371.  In ruling on the Government's Rule 16 obligations, the Court focused its inquiry on the decision-making process, in particular who was involved in the timing and progress of the defendant's case in the

Southern District of New York.  The Court concluded that "responsible officials within DoJ who were *involved in making the series of decisions* [about the discovery requested] . . . were sufficiently involved with the prosecution properly to be considered 'the government' for Rule 16 purpose."  *Id*. at 372 (emphasis added).

Although *Ghaliani* was a national security case, the principles the Court applied are applicable here.   Here, the SEC and the Government made their own decisions, independent of one another, about who and what to charge.  Of course, the agencies came to different decisions on at least one important point — whether to charge Robert Olan.  Therefore, the investigations are necessarily separate.

## B.      Olan is Not Entitled to the SEC's Work Product

As noted, the Government has already produced to the defendant the documents that the SEC considered in making its charging decisions and was present for any interviews the SEC considered in reaching their decision.  Consistent with *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012), and *United States v. Walters*, No. 16 Cr. 338 (PKC) (Dkt. 51, Tr. 11-14), the Government has also voluntarily agreed to review the SEC's notes and memoranda of witness statements for *Brady* material.

Not satisfied, Olan asked the Government to review the SEC's internal, core deliberative work product as well:  the SEC staff memoranda with respect to whether to sue Olan.  The Government asked the SEC if it would allow the Government to do so.  (Naftalis Decl. ¶ 13).  The SEC declined, citing attorney-client, work product, and deliberative process privileges.  (*Id.*).  That said, the SEC has represented to the Government that in making its charging decision regarding Olan, the SEC relied only on documents also in possession of the Government and witness statements from interviews at which the Government was also present.  (*Id.*).  In other words, the SEC considered the information that Olan has or will

5

have: documents and the SEC's notes of witness statements (which the Government will review for *Brady*).

Thus, the only information that the defendants do not have is the SEC's internal memoranda assessing the evidence against Olan and whether to charge him. Courts have long held that the SEC's work product regarding charging decisions is protected from disclosure under various privileges. *See*, *e.g.*, *Feshbach v. SEC*, 5 F. Supp. 2d 774, 784 (N.D. Cal. 1997) (internal memoranda from Commission staff to the Commission summarizing status of investigation and recommending future course of action protected from disclosure by the attorney-client privilege); *Abraham Fruchter & Twersky LLP v. SEC*, 5 Civ. 39 (HB), 2006 WL 785285, at *3 (S.D.N.Y. Mar. 29, 2006) ("the rationale behind the [deliberative process] privilege is that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news"); *SEC v. Cavanaugh*, 98 Civ. 1818 (DLC), 1998 WL 132842, at *2 (S.D.N.Y. Mar. 23, 1998) (documents privileged where prepared by attorneys determining whether to recommend enforcement action); *SEC v. Somers*, 2013 WL 4045295, at *2 (D. Kan. Aug. 8, 2013) (holding that an SEC action memorandum and associated documents "are created in anticipation of litigation, and at the very least, the attorney work product privilege protects them").[2] Accordingly, the SEC's deliberative process, including its selection, compilation and analysis of any underlying documents it possesses, is protected as work product. *See Spork v. Peil*, 759 F.2d 312, 315 (3d Cir.1985) (holding that third-party documents can be work product where "identification

---

[2]    *United States v. Gluk*, 831 F.3d 608 (5th Cir. 2016), is not to the contrary. In that case, the court ruled that the Government should have disclosed to the defendants SEC memoranda about the SEC's investigation that had been provided to the Government. However, the court in *Gluk* did not discuss the issue of privilege, focusing instead on whether the memoranda at issue were admissible under Rule 803(8). Further, the memoranda at issue in *Gluk* had been circulated outside of the SEC, which has not occurred here.

of ... documents as a group will reveal defense counsel's selection process, and thus his mental impressions").

Recently, in *United States v. Klein*, No. 16 Cr. 442, 2017 WL 782326, (E.D.N.Y. Feb. 28, 2017), the court rejected defendant's attempt to access to the SEC's Action Memorandum, which is a document prepared by SEC staff to the Commission with legal advice and recommendations about charging. The court found that:

> the Action Memorandum is protected, in its entirety, by both the attorney-client and deliberative process privileges. The memorandum was drafted by Enforcement Division attorneys in order to convey legal advice to the Commission. No portion of the memorandum "merely relays factual information"; the entire memorandum is the privileged and confidential legal advice of counsel. Further, the Action Memorandum was both pre-decisional and deliberative. Indeed, the Action Memorandum contains specific recommendations concerning whether the Commission should pursue future legal action against the subjects of an investigation.

*Id.* at *3

The court in *Klein* also found that the defendants could not overcome the protections of the deliberative process privilege or the work product doctrine. *Id.* at *5 ("In light of the disclosures that have already been provided . . . [the defendant] has little, if any, legitimate need for the Action Memorandum and cannot demonstrate that any such need is sufficient to overcome the protections of the work product doctrine or deliberative process privilege.").

The same is true here. Olan seeks access to heartland SEC work product — insight into the opinions and mental processes of SEC attorneys regarding whether to sue Olan. The memoranda from SEC staff to the Commission are protected by the attorney-client privilege, the deliberative-process privilege, and the work-product doctrine. In this regard, this case is distinct from *Gupta,* where Judge Rakoff found that the defendant had overcome the SEC's privilege assertion by demonstrating a "substantial need" to review documents that had nothing to do with the SEC's deliberative process. In that case, the defendants did not seek discovery of SEC attorney opinions about charging decisions, which Olan seeks here. Nor did

7

the defendant in *Gupta* have access to all of the documents collected by the SEC, as Olan has here.  Instead, the defendant requested that the Government review SEC notes taken by SEC attorneys during joint interviews for *Brady* material — which the Government has already agreed to review here.  Further, Judge Rakoff found in *Gupta* that "to the extent Gupta seeks disclosure of the notes and memoranda beyond any *Brady* material, he has not met the burden to overcome work product protection."  *Gupta*, 848 F. Supp. 2d at 496.  Because Olan has all of the materials underlying the SEC's decision not to charge him, he cannot demonstrate a substantial need for the production of the SEC's work product under *Brady*.[3]

### C.    The Government Has Satisfied Its *Brady* Obligations With Respect to Subject-1's Presentation

Finally, Olan contends that he is entitled to any *Brady* materials relating to a presentation that a subject ("Subject-1") made to the Government.  (Naftalis Decl. ¶ 11).  The Government has reviewed its notes from that presentation and confirmed that the information conveyed to the Government does not include any *Brady* materials.[4]

---

[3]     Olan also contends that this privilege must be asserted by the SEC, not the Government.  The Government has represented the SEC's position to the Court and defense counsel in the Naftalis Declaration.  To the extent the Court requires the SEC itself to assert the privilege, the Government will request that the SEC formally intervene.

[4]     Separately, the Government notes that Party-1 made a number of presentations to the Government.  (Naftalis Decl. ¶ 10).  Olan has access to Party-1's documents and to the extent Olan seeks any additional information related to Party-1's presentations to the Government, Olan should contact counsel for Party-1, whom the Government will identify for Olan.

### III.   Conclusion

For the foregoing reasons, the Government respectfully submits that the Court should

deny Olan's motion.

Dated: New York, New York                          Respectfully submitted,
      January 31, 2018

                                            Robert Khuzami
                                            Acting United States Attorney

By:    /s/
          Ian McGinley
          Joshua A. Naftalis
          Brooke E. Cucinella
          Assistant United States Attorneys
          Tel.: (212) 637-2257/2310/2477

9